UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NEIL CARDOSO, BENJAMIN NIEVES, AND
JERMAINE DORSEY

                Plaintiffs,

      -against-

THE CITY OF NEW YORK, "OFFICER CALDWELL"
(#15239), "OFFICER BOOKER" (#7409), AND JOHN
DOE #1-10 (THE NAME JOHN DOE BEING
FICTITIOUS, AS THE TRUE NAME(S) IS/ARE
PRESENTLY UNKNOWN),

                Defendant.
------------------------------------------------------------------------X

Index No.: 13-CV-3963
(AJN)(DCF)

**THIRD AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

The Plaintiffs, complaining by their attorney(s), THE LAW OFFICE OF ANDREW L. HOFFMAN, P.C., respectfully show this Court and allege:

## INTRODUCTION

1. This is a civil rights action to vindicate the rights of Plaintiffs Neil Cardoso, Benjamin Nieves, and Jermaine Dorsey.

2. Neil Cardoso is a retired U.S. Postal worker, former president of American Postal Workers Union Local 1241, and a father of five; Benjamin Nieves works in the restaurant industry, is the father of two, and the grandfather of three; Jermaine Dorsey is a commercial driver, and a father of two.

3. All three were forced to endure an array of deplorable, dangerous, and unconstitutional deprivations of their constitutional rights while incarcerated as pre-trial detainees at Rikers Island Correctional Facility.

1

4. Unlike many other Rikers detainees, Neil Cardoso brought his experience as a union president to the fore, challenging the deplorable conditions at Rikers and encouraging fellow inmates, such as Benjamin Nieves and Jermaine Dorsey, to do the same.

5. The named Defendants in this case are being sued for outrageous, vindictive, and despicable acts which violated the Plaintiffs' rights, and in one case, threatened their lives.

6. The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City correctional officers, and for continuing to tolerate and defend a widely publicized departmental culture of willful indifference toward the rights of citizens.

## JURISDICTION

7. Jurisdiction is founded upon the existence of a Federal Question.

8. This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to the Plaintiff by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. Section 1983 and arising under the law and statutes of the State of New York.

9. Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3) and 1343(4), this being an action authorized by law to redress the deprivation under the color of law, statute, ordinance, regulation, custom and usage of rights, privileges and immunities secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States.

## VENUE

10. Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Southern District.

## PARTIES

11. At all times relevant and hereinafter, Plaintiff NEIL CARDOSO was a resident of Queens, New York; Plaintiff BENJAMIN NIEVES was a resident of the Bronx, New York; and Plaintiff JERMAINE DORSEY was a resident of Manhattan, New York. All three were pre-trial detainees at Rikers Island during the periods relevant to this litigation.

12. Upon information and belief, at all times hereinafter mentioned, Defendant CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant correctional officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

13. Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the NEW YORK CITY DEPARTMENT OF CORRECTIONS, including all the correctional officers thereof.

14. Upon information and belief, at all times hereinafter mentioned, Defendant OFFICERS BOOKER, CALDWELL, AND JOHN DOE #1-10 were employed by the Defendant CITY OF NEW YORK, as correctional officers for the New York City Department of Corrections, assigned to Rikers Island Correctional Facility.

15. The NEW YORK CITY DEPARTMENT OF CORRECTIONS is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the COMMISSIONER OF THE NEW YORK CITY DEPARTMENT OF CORRECTIONS is responsible for the policies, practices, and customs of RIKERS ISLAND CORRECTIONAL OFFICERS as well as the hiring, screening, training, supervising, controlling and disciplining of its officers and civilian employees, and is the final decision maker for that agency.

16. This action arises under the United States Constitution, particularly under provisions of the Fifth, Eighth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and the rights guaranteed by the Constitution and laws of the State of New York.

17. Individual Defendants in this action are being sued in both their individual and official capacities.

## STATEMENT OF FACTS

### -Defendant Booker-

18. In or about November of 2012, Defendant C.O. Booker regularly worked Housing Area 6B at the George R. Vierno Center (GRVC), Rikers Island, New York.

19. The 6B housing area housed non-violent, low-classification detainees, such as the Plaintiffs, who posed little or no security risk.

20. High-classification detainees, such as gang members and others accused of violent offenses, were directly across in the 6A housing area, which was separated from 6B by a small pantry area.

21. By all accounts, Defendant Booker ruled the 6B housing area with tyrannical force.

22. Booker often bragged that she was romantically involved with one of the "deps" (either a deputy officer or deputy warden) and warned the 6B detainees not to complain about her treatment of them, lest she complain to her boyfriend and make their lives difficult.

23. Booker sometimes brought her "dep" boyfriend, who, upon information and belief, was named "Winston," around the 6B housing area to flaunt their relationship and intimidate the detainees.

24. Booker also frequently violated Rikers policy by inviting detainees from the "A" side to pass through the pantry onto the "B" side to use that section's phone, and socialize with her.

25. In so doing, Booker's message to 6B detainees was clear: I am friendly with and provide phone favors for the violent guys in 6A, and if you step out of line, they will do favors for me—quite possibly to your physical detriment.

26. Booker was frequently verbally abusive to Jermaine Dorsey, whom she seemed to especially enjoy bullying, regularly saying, among other things, that he kept his cell like a "dirty nigger."

27. On one occasion, Booker yelled loudly and publicly at Dorsey, announcing in sum and substance, "No wonder your baby mama got you locked up," effectively broadcasting the nature of Dorsey's charges to the entire housing unit, and placing him in genuine danger.

28. It is against this backdrop that on November 14, 2012, Plaintiff Benjamin Nieves was unable to make a scheduled trip to the commissary because he had been treated in the medical clinic that day.

29. When Nieves, whose cell was near Cardoso's in 6B, asked Booker to allow him to go to the commissary at a slightly later time, Booker refused, saying, in sum and substance that because Nieves had "chosen" sick call over commissary, he would not be allowed to go—not even for a regularly scheduled "make-up" trip to the commissary.

30. Former union president Neil Cardoso encouraged Nieves to complain to a captain who was on patrol in an enclosed area nearby known as "the bubble."

31. Nieves made the complaint at his earliest convenience, the captain issued a pass for Nieves to go to the commissary, and Booker was infuriated.

32. Shortly thereafter, in a deliberate and demonstrative way, Booker passed through the pantry to the 6A side, and approached several detainees who were known to be violent.

33. As Nieves and Cardoso watched, Booker pointed at them and several other detainees, including Jermaine Dorsey, in a manner that suggested they were somehow trouble makers, effectively targeting and sanctioning violence against all three of them.

34. When several detainees confronted Booker about this, Booker was brazen and defiant, readily admitting what she had done, and stating in sums and substance, "What are you going to do about it?".

35. Soon thereafter, the Plaintiffs complained to "Captain Brown," and Booker was transferred to another section of Rikers; Nieves was transferred to another unit as well, though he continued to see Booker in common areas and continued to fear for his life, not knowing the real extent of Booker's reach or influence.

36. In the days that followed, Plaintiff Cardoso, who was diagnosed with an anxiety condition as a result of his stay at Rikers, also remained justifiably terrified.

37. For several weeks, Cardoso avoided going to the "yard" for outdoor time, as it was an area that afforded opportunities for the 6A high-classification inmates to take Booker up on her apparent invitation to assault or kill him.

38. Prior to being transferred, Booker had specifically taunted Nieves to "watch [his] back in the yard," and stating "this isn't over."

39. Dorsey was so alarmed by the dangerous and threatening conditions Booker had created, he regularly volunteered for work assignments away from his housing unit, sometimes working double and triple shifts simply to avoid the dangerous conditions created by Booker.

40. One of the jobs Dorsey worked involved keeping an eye on detainees who were on suicide watch; frequently, these detainees were the subjects of violent and disturbing encounters with corrections officers.

41. As upsetting as it was for Dorsey to witness those encounters, he found it preferable to enduring the terrifying dangers that existed in his housing unit, as a result of Defendant Booker's rampant and ongoing abuses.

42. Amazingly, during the Christmas holiday season when officers' schedules were shuffled due to vacations, Defendant Booker was once again assigned to the 6B housing area, where Cardoso and Dorsey continued to reside.

43. Booker wasted no time in continuing to torment Cardoso and Dorsey, stating in sum and substance, "This isn't over," effectively guaranteeing that she intended to retaliate for their having complained about her; in addition, for a period of days ranging from about

December 19-26, 2012, Booker refused to let Mr. Cardoso out of his cell to access his daily medication, including medication to treat his diagnosed anxiety condition.

44. As a result, Mr. Cardoso suffered a terrible spike in his anxiety, including panic attacks, sleeplessness, and related symptoms.

45. All of the Plaintiffs continued to suffer from considerable anxiety for the duration of their stays at Rikers, never knowing if or when they would be assaulted or worse, per a directive from Defendant Booker.

46. All of the Plaintiffs filed grievances against Booker, but upon information and belief, Booker's employment was retained, and she received no discipline for her outrageous and despicable conduct.

### -Defendant Caldwell-

47. In or about January of 2013, Defendant C.O. Caldwell was assigned to the Rikers law library.

48. By then, Mr. Cardoso had been at Rikers for almost a year, and had become known among Rikers staff for regularly filing grievances regarding the conditions of his confinement, and encouraging other inmates to join him in his efforts to bring about much needed reforms.

49. On January 25, 2014, C.O. Caldwell, who was friendly with the Rikers employee who processed Mr. Cardoso's grievances, suddenly decided to prevent Mr. Cardoso from further utilizing the Rikers law library.

50. When Mr. Cardoso asked for an explanation, Caldwell refused; when Mr. Cardoso threatened to report Caldwell to the Commissioner, Caldwell responded, in sum and

substance: "Fuck you and fuck the Commissioner, she can go fuck herself, I don't give a fuck."

51. Caldwell also stated that she knew Cardoso as the guy who was "always filing grievances," and the C.O.s at Rikers had "had enough" of him.

52. Mr. Cardoso was unable to access the law library for in excess of a month, despite numerous complaints and grievances.

53. Consequently, Mr. Cardoso's ability to assist with his criminal defense was gravely hindered; Mr. Cardoso was also unable to effectively file requisite Notices of Claim and grievances aimed at challenging the unconstitutional conditions of his confinement.

54. In particular, with respect to Defendant Booker, Plaintiff was unable to timely file a Notice of Claim regarding her conduct, and his attempt was rejected by the Comptroller, costing him any number of valid state claims against her.

## AS AND FOR THE FIRST CAUSE OF ACTION
## ON BEHALF OF PLAINTIFFS NEIL CARDOSO, BENJAMIN NIEVES, AND JERMAINE DORSEY AGAINST DEFENDANT BOOKER

**Violation of Constitutional Rights Under Color of State Law
—Failure to Protect/State Created Danger—**

55. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 54.

56. The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects citizens from state actors who affirmatively create or enhance the danger of private violence against citizens.

57. The actions of Defendant Officer "Booker" violated Plaintiffs' rights under the United States Constitution. Given the total absence of any legal justification for explicitly or

9

implicitly sanctioning violence against the Plaintiffs by other detainees at Rikers Island, Booker's conduct shocks the contemporary conscience and was in no way Objectively Reasonable under any set of circumstances.

58. Defendant Booker's egregious and outrageous actions were motivated by bad faith, malice, and a deliberate indifference to the rights of the Plaintiffs.

59. This conduct on the part of Booker also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

60. As a direct and proximate result of the unconstitutional acts described above, the Plaintiffs were substantially injured.

### AS AND FOR THE SECOND CAUSE OF ACTION
### ON BEHALF OF PLAINTIFFS NEIL CARDOSO, BENJAMIN NIEVES, AND JERMAINE DORSEY AGAINST DEFENDANT BOOKER

**Violation of Constitutional Rights Under Color of State Law
—First Amendment Retaliation—**

61. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 60.

62. It is well established that the First Amendment protects prisoners from retaliation for protected speech, including complaints pertaining to the conditions of their confinement.

63. Plaintiffs were targeted by Defendant Booker for state-sanctioned violence, as set forth herein, in direct response to their seeking the intervention of a superior officer to resolve a conflict with her, and subsequently filing grievances against her.

64. Booker also denied Neil Cardoso access to his prescribed medication in direct response to Plaintiffs' grievances, as set forth herein.

65. Booker's egregious and outrageous actions were likely to chill the Plaintiffs, persons of ordinary firmness, from continuing to engage in the aforedescribed activities protected by the First Amendment and were motivated by bad faith, malice, and/or deliberate indifference to the rights of the Plaintiffs.

66. This conduct on the part of Defendant Booker also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

67. As a direct and proximate result of the unconstitutional acts described above, Plaintiffs were substantially injured.

## AS AND FOR THE THIRD CAUSE OF ACTION
## ON BEHALF OF NEIL CARDOSO AGAINST DEFENDANT BOOKER

### Violation of Constitutional Rights Under Color of State Law
### -Denial of Medical Care-

68. Plaintiff Neil Cardoso incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 67.

69. Under the Fourteenth Amendment, states must not deprive pre-trial detainees of their basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety.

70. Neil Cardoso had a diagnosed anxiety condition as set forth herein, and for a period of days, was denied access to medications prescribed to treat that condition.

71. Mr. Cardoso repeatedly protested Defendant Booker's refusal to provide access to his prescribed medications.

72. Defendant Booker's egregious and outrageous conduct caused the Plaintiff to suffer substantial fear, multiple panic attacks, sleeplessness, inability to concentrate, shortness of breath, irregular heartbeat and related symptoms.

73. This conduct on the part of Defendants was a violation of 42 U.S.C. §1983, given that said actions were undertaken under color of state law.

74. Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights Neil Cardoso.

75. As a direct and proximate result, Mr. Cardoso was substantially injured.

### AS AND FOR THE FOURTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF NEIL CARDOSO AGAINST DEFENDANT CALDWELL

**Violation of Constitutional Rights Under Color of State Law
—First Amendment Retaliation—**

76. Plaintiff Neil Cardoso incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 75.

77. It is well established that the First Amendment protects prisoners from retaliation for protected speech, including complaints pertaining to the conditions of their confinement.

78. Neil Cardoso was targeted by Defendant Caldwell in direct response to Cardoso's threatening to file complaint against her with the Commissioner, as well as his ongoing efforts to file grievances challenging unconstitutional conditions of confinement.

79. Caldwell's egregious and outrageous actions were likely to chill the Plaintiff, a person of ordinary firmness, from continuing to engage in the aforedescribed activities protected by the First Amendment and were motivated by bad faith, malice, and/or deliberate indifference to the rights of Neil Cardoso.

80. This conduct on the part of Defendant Caldwell also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

81. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Neil Cardoso was substantially injured.

### AS AND FOR THE FIFTH CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF AGAINST DEFENDANT CALDWELL

**Violation of Constitutional Rights Under Color of State Law**
**-Denial of Access to the Courts-**

82. Plaintiff Neil Cardoso incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 81.

83. Prisoners, including pretrial detainees, have a constitutional right of access to the courts, grounded in the constitutional guarantees of Due Process and Equal Protection under the Fifth and Fourteenth Amendments.

84. This right requires prison authorities to assist inmates in the preparation of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law, and applies specifically to prisoners' efforts to challenge the conditions of their confinement.

85. Defendant Caldwell maliciously prevented the Plaintiff from accessing the law library for over a month as he sought to mount legal challenges to the conditions of his confinement.

86. Plaintiff repeatedly asked his various criminal attorneys, most of whom were 18B appointees, for assistance with his constitutional claims regarding the conditions of his confinement, and they consistently indicated that they were incapable of providing such assistance, as it was outside the scope of their capabilities as criminal defense attorneys.

87. There were no other sources of legal assistance available to the Plaintiff to assist him in challenging the conditions of his confinement, other than the prison law library; thus,

Defendant Caldwell's denial of access effectively foreclosed the Plaintiff's access to the courts.

88. As a direct result of the unconstitutional acts set forth herein, Mr. Cardoso was effectively coerced into taking a plea deal he would not otherwise have taken, and several requisite Notices of Claim the Plaintiff attempted to file as precursors to valid legal action were rejected as untimely, including a Notice of Claim pursuant to Booker's misconduct as stated herein.

89. Defendant Caldwell's actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Mr. Cardoso.

90. Caldwell is liable for said damage and injuries pursuant to 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

91. As a direct and proximate result of the unconstitutional acts described above, Plaintiff Neil Cardoso was substantially injured.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFFS AGAINST DEFENDANTS CITY OF NEW YORK**
**AND DOE #1-10**

**Violation of Constitutional Rights Under Color of State Law**
**-Implementation of Municipal Policies, Practices, and Customs that Directly Violate**
**Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional**
**Deprivations and Failure to Train and Supervise Employees**
**Under Color of State Law-**

92. Plaintiffs incorporate by reference and reallege each and every allegation stated in Paragraphs 1 through 91.

93. Upon information and belief, Defendants City of New York and Doe #1-10 who were supervisors and final decision makers, as a matter of policy, practice, and custom, have

acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct correctional officers concerning the rights of detainees, and allowed or encouraged failures to investigate further when evidence plainly indicated Plaintiffs' rights were being violated.

94. In the alternative, and upon information and belief, Defendants City of New York and Doe #1-10 instituted policies addressing the topics listed above, but through a culture of gross negligence, carelessness, and malice demonstrated a deliberate and willful indifference to the constitutional rights of the Plaintiffs.

95. In addition, the nature, regularity, and scale of recent press revelations[1] involving the gross mistreatment of detainees at Rikers Island, gives rise to an overwhelmingly strong inference of systemic incompetence and corruption on the part of the New York City Department of Corrections, as such a legacy of injustices cannot plausibly be laid at the feet of a few rogue officers.

---

[1] Feds Charge Rikers Island Officer with Letting Inmate Die, New York Daily News, Mark 24, 2014, available at http://www.nydailynews.com/new-york/feds-charge-rikers-island-officer-letting-inmate-die-article-1.1732076; Homeless Veteran 'basically baked to death at Rikers Island while being Held on a Trespassing Charge, New York Daily News, March 20, 2014, available at http://www.nydailynews.com/new-york/inmate-rikers-island-basically-baked-death-100-degree-room-report-article-1.1726713; Rikers Island Struggles with a Surge in Violence and Mental Illness, New York Times, March 18, 2014, available at http://www.nytimes.com/2014/03/19/nyregion/rise-in-mental-illness-and-violence-at-vast-jail-on-rikers-island.html?_r=0; Rikers Violence Out of Control, Village Voice, May 9, 2014, available at http://www.villagevoice.com/2012-05-09/news/rikers-violence-out-of-control/;U.S. Inquiry Finds a 'Culture of Violence' Against Teenage Inmates at Rikers Island, New York Times, August 4, 2014, available at http://www.nytimes.com/2014/08/05/nyregion/us-attorneys-office-reveals-civil-rights-investigation-at-rikers-island.html?_r=1; Rikers: Where Mental Illness Meets Brutality in Jail, New York Times, July 14, 2014, available at http://www.nytimes.com/2014/07/14/nyregion/rikers-study-finds-prisoners-injured-by-employees.html?module=Search&mabReward=relbias%3Ar%2C%7B%221%22%3A%22RI%3A9%22%7D; U.S. Accuses Rikers Officer of Ignoring Dying Plea, New York Times, March 24, 2014; Warden at Rikers Island Demoted After Inmate Dies in Overheated Cell, New York Times, April 3, 2014; What I Saw at Rikers Island: Cecily McMillan on Brutality and Humiliation on Rikers Island, New York Times, July 23rd, 2014; New York Hires Consultant to Create Rikers Reform Plan, New York Times, September 8, 2014; Family of Rikers Inmate Sues Over His Death, New York Times, September 11, 2014.

15

96. Defendants also, upon information and belief, demonstrated deliberate indifference to the rights of detainees in the City of New York by failing to adequately hire, screen, train, and supervise correctional officers at Rikers Island.

97. The policies, procedures, customs and practices of the above-referenced Defendants violated the Constitutional rights of the Plaintiff under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

98. This conduct on the part of Defendants also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

99. Upon information and belief, none of the Defendants named herein have been disciplined in any way for their actions relative to the Plaintiff; nor has the Internal Affairs Bureau or other investigative body undertaken an investigation of the events complained of herein.

100. As a direct and proximate result of the unconstitutional acts described above, the Plaintiffs were substantially injured.

## DEMAND FOR PUNITIVE DAMAGES

101. The actions of Defendants described herein were extreme and outrageous, and shock the conscience of a reasonable person. Consequently, an award of punitive damages is appropriate to punish the named Defendants. The Plaintiffs do not seek punitive damages against the City of New York.

## DEMAND FOR TRIAL BY JURY

102. The Plaintiffs hereby demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Neil Cardoso, Benjamin Nieves, and Neil Cardoso request that this Honorable Court grant the following relief:

A. A judgment against Defendants Booker, Caldwell and Doe(s) for compensatory damages, and punitive damages in an amount to be determined by a properly charged jury;

B. A judgment against the Defendant City of New York for compensatory damages in an amount to be determined by a properly charged jury;

C. A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

D. Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York
       September 16, 2014

Respectfully Submitted By:

The Law Office of Andrew L. Hoffman, P.C.
By:

_____/s/_____
Andrew L. Hoffman, Esq.
SDNY Bar Code Number: AH2961
261 Madison Avenue, 12 Floor
New York, New York 10016
T:     (212) 736-3935
E: ahoffman@andrewhoffmanlaw.com